UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DISTRICT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) NO. 4:21 CR 213 SRC/DDN |
| ARCHIE RICHARDSON, | ) |
| Defendant. | ) |

**UNITED STATES OF AMERICA'S OPPOSITION TO DEFENDANT'S MOTION TO MOTION TO REOPEN DETENTION HEARING & FOR PRETRIAL RELEASE.**

COMES NOW the United States of America, by and through its attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, and Lisa M. Yemm, Assistant United States Attorney for said District, and in support of the United States of America's Opposition to Defendant's Motion to Reopen Detention Hearing and For Pretrial Release (herein "Motion for Pretrial Release," Doc. # 18) as follows:

1. The United States incorporates by reference its position on detention as fully stated in the United States of America's Motion for Pretrial Detention and Hearing (Doc. #4).[1]

2. This position is shared by the United States Pretrial Services Office. The report submitted to the court on or about March 22, 2021, concluded that there is no condition or combination of conditions that will reasonably assure the appearance of the defendant as required and the safety of the community and respectfully recommended the defendant be detained. Doc. #9.

3. In his Motion for Pretrial Release, now before this Court, the Defendant asserts as

---

[1] The United States agrees that its Motion for Pretrial Detention and Hearing incorrectly asserted that a rebuttable presumption favoring detention applied pursuant to 18 U.S.C. Section 3142(e)(3). The Court, however, properly declined to apply any presumption favoring detention and its order is therefore correct.

1

the principle reasons for his release that 1) he has a reputation as a non-violent person and significant and close family ties; 2) the unfounded and incorrect allegation that the "government did not believe Mr. Richardson was an imminent threat during its investigation" (Doc. # 18, p. 2); 3) the unfounded and incorrect allegation that "the government is relying on so-called 'sovereign citizen materials' found during the search warrant's execution to suggests [sic] that Mr. Richardson is somehow a danger to the community (Doc. #18, pp. 3-4); and 4) that suspected substances found by law enforcement "were found in a location and setting strongly suggesting they had not been recently used by the defendant," which "raises strong doubts about this Court's finding…that Mr. Richardson is a long term, regular user of methamphetamine and may also be using hallucinogenic substances." Doc. # 18, p. 4).

4.   As an initial matter, there is no dispute that Mr. Richardson has close family ties, gainful employment, and little to no criminal history. That information was available to the Court in the report prepared by Pretrial Services Report (Doc. #9) and was argued extensively by Mr. Marsh, the Federal Public Defender who represented Mr. Richardson at the Detention Hearing. *See* Government's Exhibit 1, Detention Hearing Transcript (D.H. Tr.), p.8:13-9:20.

5.   With respect to Defendant's new claim that the United States did not believe Mr. Richardson was an imminent threat during the investigation of this case, that allegation is unsupported and not accurate. During the approximately six weeks from the time Mr. Richardson's activities came to law enforcement's attention to the time he was arrested and a complaint was sought, law enforcement diligently investigated the allegations to develop the requite probable cause to seek search warrants, and they immediately acted on what they found. Furthermore, both Mr. Richardson's regular use of methamphetamine and admission that he was, in fact, detonating devices, were unknown to law enforcement until his arrest, at which time the

Government sought pre-trial detention.  A general timeline of the investigation is illustrative:[2]

    a.    On February 2, 2021, ATF was informed by an anonymous source (AS) that Mr. Richardson had been making and detonating homemade explosives in his backyard in the 1800 block of Timber Lane, in High Ridge, Missouri.

    b.    On February 3, 2021, ATF initiated its own surveillance and additionally spoke to the owner of a nearby business, who confirmed he had heard an explosion nearby and that one of his employees had recently discovered what was described as a "pipe bomb" constructed of PVC plastic piping as well as other similar devices. ATF deployed bomb-sniffing K9s, and located one such suspected device:



    c.    On that same date, February 3, 2021, ATF attempted to speak with Mr. Richardson by phone regarding the explosions.  Mr. Richardson was uncooperative and refused to talk about explosives or to make arrangements to speak with ATF.

    d.    On March 2, 2021, at approximately 10:45 PM, ATF was informed by AS, who lives near Mr. Richardson, that an explosion had just occurred in the Timber Lane neighborhood.  ATF responded to investigate.

    e.    On March 3, 2021, ATF spoke with additional witnesses living in the vicinity of Mr. Richardson's residence, who also reported hearing explosions coming from

---

[2] This timeline is provided for purposes of rebutting Defendant's claims that the government did not believe Mr. Richardson was a danger to the community during its investigation and "merely observed him and allowed him to continue."  Doc. 18, p.3.  It should not be deemed a Bill of Particulars binding the United States to a fixed theory of proof.

3

|   |   |
|---|---|
|   | Mr. Richardson's property.  ATF conducted additional searches of adjacent property and found more evidence of suspected destructive devices, including a white PVC pipe wrapped in plastic card game covering, approximately 10 inches long, with black powdery substance inside; shards of PVC, and more white PVC pipe that appeared to have black residue at one end.  ATF then conducted additional surveillance of Mr. Richardson's property. |
| f. | On March 4, 2021, ATF investigators returned and installed "pole cam" (i.e. a surveillance camera) with the permission of a nearby business owner, in attempt to gather further evidence regarding the origin of the explosions and devices being found in the vicinity of Mr. Richardson's property. |
| g. | On March 10, 2021, at 10:33 PM, ATF received another phone call from a resident living nearby Mr. Richardson.  The resident explained it was the largest explosion to-date and that he/she believed it occurred in the backyard of Mr. Richardson's residence.  AS called to report the same incident shortly thereafter.  Jefferson County Sheriff's Office also responded and attempted to contact Mr. Richardson at his property.  Mr. Richardson responded to the deputy words to the effect that the explosion did not happen at his property, and he shut the door in the deputy's face. |
| h. | On March 11, 2021, ATF responded to the Timber Lane neighborhood where they continued their investigation, including conducting a trash pull and requesting bomb sniffing K9s to assist.  The K9s conducted an open air sniff in an attempt to locate the previous night's explosion.  Behind a nearby business, they located a large basketball sized crater.  Located near the crater was one yellow rubber end cap (which the K9s alerted to); approximately 75 yards away, the K9s located a second yellow rubber end cap.  Both yellow end caps had a black residue on them. |
| i. | On March 12, 2021, ATF sought federal search warrants authorizing the search of Mr. Richardson's property and vehicle.  The warrants were signed by Magistrate Judge David Noce. |
| j. | Due to the danger posed by Mr. Richardson's activities and the nature of materials ATF believed it would find, ATF sought to support the search warrant operation with an ATF Special Response Team (SRT), an ATF Explosives Enforcement Officer, and ATF Special Agent Bomb Technician, as well as the St. Louis Regional Bomb and Arson unit (SLRBA) and the Jefferson County Sheriff's Office.  A number of ATF personnel required for the operation were non-local.  Law enforcement required approximately one week to assemble the necessary personnel and equipment as well as to formulate an operations plan for the agencies involved. |
| k. | On March 18, 2021, at approximately 6:30 AM, the search warrants were executed, and Mr. Richardson was arrested. The Government charged Mr. Richardson by way of complaint the following day, March 19, 2021. |

4

6. Law enforcement diligently investigated Mr. Richardson's activities. The length of the investigation was necessary to develop sufficient evidence and the requisite probable cause to seek the search warrants, which in turn provided probable cause required to arrest and ultimately indict Mr. Richardson. The assertion that law enforcement did not believe Mr. Richardson was a danger to the community because they did not immediately arrest him at the outset of the investigation, (and instead, conducted a thorough investigation supported by evidence and probable cause) is absurd.

7. With respect to Defendant's assertion that "the defense has learned the government is relying on so-called 'sovereign citizen materials' found during the search warrant's execution to suggests[sic] that Mr. Richardson is somehow a danger to the community" (Doc. #18, p. 3), the Government is unaware of any support for this allegation in the record. Among other evidence and facts related to the case, the Government's detention motion lists all of the items found in Mr. Richardson's truck during the execution of the search warrant: "In his truck, they discovered one firearm, one M-60 series explosive device, an explosive fuse, one digital scale, five jars containing powder suspected to be explosive material, PVC pipe with several pipe collars, one funnel, one small bottle of unidentified liquid, two cardboard tubes, one notebook pertaining to Sovereign Citizens, and one notebook pertaining to explosive mixture instructions." (Doc. #4, p. 3). The Detention Motion clearly states the Government's position and its basis for requesting detention, namely that: "Defendant's admitted drug use, and the nature and circumstances of the offense charged – namely the transport of explosives by an unauthorized person – as well as his admissions that he has been constructing destructive devices and the evidence showing that a number of these devices have been set off in the community all reflect that there is a serious danger to the community that would be posed by the Defendant's release." *Id.* Nowhere does the Government

5

cite the notebook as a basis on which Defendant should be detained pending trial nor does the Government rely on the notebook to suggest Defendant is a danger to the community. The Government believes Defendant is a danger to the community because he has been repeatedly causing explosions and making and transporting explosive materials without being a licensee or permittee, and further because he has admitted to law enforcement he regularly uses methamphetamine.[3]

8.  Finally, with respect to Defendant's challenge to the Court's finding that he is a long-term, regular user of methamphetamine and may also be using hallucinogenic substances, the Government submits that finding is supported by the evidence. Defendant states that is "has learned from discovery that the suspected controlled substances seized by police were found in a location and setting strongly suggesting that they had not been recently used by the defendant." Doc. #18. The search warrant return reflects that "miscellaneous drugs/paraphernalia" were found in a box labeled "Jenny's Box." Gov. D.H. Exh. 3, p. 3. That box was located in a bedroom in Mr. Richardson's home, which Mr. Richardson has access to. Possession under the law may be

---

[3] The contents of the notebook were disclosed to defense on April 13, 2021. The Government stands by the characterization of the notebook as "a notebook pertaining to Sovereign Citizens." (Doc. #4, p. 3). One page appears to contain instructions or a script if one is brought before a judge in a criminal proceeding. Gov. D.H. Ex. 2, p.2. That page instructs the reader to state he or she is appearing "in propria persona making a special appearance as grantor and beneficiary of the estate being administered in this case relating to the Named Defendant. DO NOT say your name." *Id.* The page also instructs: "Enter your presence FROM THE GALLERY. DO NOT CROSS THE BAR," and "For the record, I reserve all rights at all times, and waive none EVER." Page 3 instructs the reader to ask the judge: "Judge if cross the bar, am I entering into a contract with the Court? YES or NO?" and later instructs to the reader to say: "Judge, with all due respect, I have no intention to board your ship. I operate under the laws of the Republic and herby INVOKE "The laws of the Republic." (Article 4, Section 4, U.S. Constitution) to manage my affairs in my court. My Court is hereby set under the laws of the Republic. *Id.; see Missouri v. Helmka*, No. 2:20-CV-47-SRC, 2020 WL 4890667, at *1 (E.D. Mo. Aug. 20, 2020) (denying removal and inferring "types of assertions often presented by those who believe they are exempt from the jurisdiction of the courts, which have been summarily rejected as frivolous by federal courts around the nation" can be characterized as those of "sovereign citizens"); *see also Gravatt v. United States*, 100 Fed. Cl. 279, 282 (2011) ("So-called sovereign citizens believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings").

sole or joint and is not premised on ownership.  Furthermore, Mr. Richardson had admitted to marijuana use, which may fairly be classified as a hallucinogen.  *See* Marijuana Research Report: What are Marijuana's Effects?, available online at https://www.drugabuse.gov/publications/ research-reports /marijuana/ what-are-marijuana-effects (last visited April 14, 2021) ("People who have taken large doses of marijuana may experience an acute psychosis, which includes hallucinations, delusions, and a loss of the sense of personal identity"). The Court's previous finding that defendant "may" also be using hallucinogens is not unfounded.

9. Furthermore, the Government's assertion that Defendant is a regular user of methamphetamine is not premised on the box found in the room he shares with his wife (Jennifer Richardson), however; it is based on Richardson's admissions to law enforcement to the effect that he smoked marijuana and used methamphetamine every other day (further explaining it is not called methamphetamine anymore and further explaining the process of how methamphetamine used to be processed; and that it is now called ice, a slang term for methamphetamine).

10. Mr. Richardson also admitted to the Pretrial Services Officer that he used marijuana from age 12 to the week before his arrest daily and using methamphetamines beginning at age 14, every couple of days, with his last use being one year ago.  Doc. #9, p.3.

11. Defendant poses a danger to the community for the reasons cited by the United States in its Motion for Pretrial Detention and Hearing (Doc. #4), and by the Pretrial Services Offices in it's March 22, 2021 report (Doc. #9).

WHEREFORE, for the foregoing reasons, the United States respectfully requests that Defendant's Motion to Reopen Detention Hearing and For Pretrial Release be denied.

        Respectfully submitted,

        SAYLER A. FLEMING
        United States Attorney


        /s/ Lisa M. Yemm
        LISA M. YEMM, #64601
        Assistant United States Attorney
        111 S. 10th Street, 20th Floor
        St. Louis, Missouri   63102
        (314) 539-2200
        Lisa.yemm@usdoj.gov

## **CERTIFICATE OF SERVICE**

     I hereby certify that on April 14, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

        All Attorneys of Record for Defendant.


        /s/ Lisa M. Yemm
        LISA M. YEMM, #64601MO
        Assistant United States Attorney