**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 4:21 CR 213 SRC |
| v. | ) | |
| | ) | |
| ARCHIE M. RICHARDSON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**GUILTY-PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

1. **PARTIES:**

The parties are the defendant Archie M. Richardson (hereinafter "Defendant" or "Richardson"), represented by defense counsel Charles Banks, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

2. **GUILTY PLEA:**

**A.** **The Plea:** Pursuant to Rule 11(c)(1)(A), of the Federal Rules of Criminal Procedure, in exchange for the Defendant's voluntary plea of guilty to Count One of the Superseding Information, United States agrees to dismiss the Indictment in this case at the time of sentencing and that no further federal prosecution will be brought in this District relative to

Defendant's violations of federal law, known to the United States at this time, arising out of the events set forth in the Superseding Information.

**B.     The Sentence:**     The parties agree that the recommendations contained herein fairly and accurately set forth some guidelines that may be applicable to this case. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553, or any other provision or rule of law not addressed herein. The parties further agree that notice of any such request will be given no later than ten (10) days prior to sentencing and that said notice shall specify the legal and factual bases for the request. **The parties further agree to jointly recommend that in addition and consecutive to any term of imprisonment imposed by the Court, the Defendant shall be sentenced to one year of supervised release.** The parties understand that the Court is neither a party to nor bound by the Guidelines recommendations agreed to in this document.

**3.     ELEMENTS:**

As to Count I, the Defendant admits to knowingly violating Title 18, United States Code, Section 842(j) and 844(b), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are as follows:

- **(i)**     The Defendant stored explosive materials;
- **(ii)**    The Defendant did so knowingly;
- **(iii)**   The materials stored were explosive materials; and
- **(iv)**    The explosive materials were not stored in a manner in conformity with regulations promulgated by the attorney general.

4. **FACTS:**

The parties agree that the facts in this case are as follows and that the United States would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

During the months of February and March of 2021, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) and the Jefferson County Sheriff's Office responded to Richardson's residence, located at 1817 Timber Lane in High Ridge, Missouri, several times in reference to reports of explosions occurring at or near the property. Throughout the investigation, law enforcement utilized K-9s trained to detect the odor of explosive material and were able to locate the following items: one steel galvanized pipe with one intact end cap and one exploded end cap that was later determined by expert analysis to be an improvised explosive bomb, four PVC or cardboard pipes with one intact end cap and one missing endcap, and several shards of PVC. All pipes contained a black powder-like substance on the interior. All recovered devices and PVC debris were recovered in the adjacent yards to Richardson's residence at 1817 Timber Lane.

Specifically, on February 2, 2021, ATF was informed by an anonymous source that Defendant had been making and detonating homemade explosives near his residence. On February 3, 2021, ATF initiated its own surveillance, and agents spoke to the owner of a business adjacent to Defendant's property, who confirmed that he had heard an explosion nearby and that one of his employees had recently discovered the steel galvanized pipe with one intact end cap and one exploded end cap, which later determined by expert analysis to be an improvised explosive bomb

On March 2, 2021, ATF was contacted by individuals living in the area of 1817 Timber Lane who reported that an explosion was heard around 8:45 PM. Jefferson County Sheriff's Deputies responded to the location and searched the area but could not locate the source.

On March 10, 2021 at approximately 2045 hours, ATF was contacted by several individuals residing near 1817 Timber Lane who reported that they heard another explosion around 8:30 PM hours. The reporting parties did not believe the explosion occurred in the backyard of Richardson's residence, rather, they believed it occurred down the road on Meadow Drive. A review of surveillance video from the area showed Richardson enter his truck, a white 2003 Dodge Ram bearing Missouri registration 7D0W25, at 8:22 PM and leave his residence. Richardson returned to his residence approximately ten minutes later, which would have provided sufficient time to detonate a device on Meadow Drive.

On March 11, ATF special agents, along with K9s trained in the detection of explosives, responded to the Timber Lane neighborhood. An open-air sniff of the neighborhood was conducted by the K-9s. While searching behind Tire Shredders Unlimited, located at 4519 Commerce Drive in High Ridge (and just minutes from Defendant's residence), the K-9s alerted to the presence of an explosive odor near a basketball sized crater. While searching that area, two yellow rubber/plastic end caps covered in black residue were discovered. The K-9s alerted on both end caps which were separated by approximately 75 yards. The K-9s also alerted to an explosive odor near a discovered device in the area of Commerce Avenue and Brandi Lane. The device was approximately six inches in length, one length in diameter, covered in a black and white powdered substance.

While investigators were searching a nearby parking lot, an individual approached the ATF Special Agents and gave them a PVC device. The device was approximately 10 inches in length and one inch in diameter, attached to a long wooden rod, and contained a black powdered substance on the interior of the pipe. This individual explained that he lived near 1817 Timber Lane and has been hearing loud explosions for the last six months. This individual reported finding shards of rubber and plastic, and other PVC devices like the one he provided to the ATF Special Agents on his property. A subsequent search of his property revealed several shards of PVC with black residue. Also located in the backyard was another device. The device was red PVC or rubber, approximately six inches in length, one inch in diameter, capped on one end with flat wood and secured with glue, missing the cap on the other end, and contained a black powdered substance in the interior of the tube.

On March 12, 2021, investigators sought and were granted federal search warrants for Richardson's residence and Richardson's vehicle, a 2003 white Dodge Ram Truck bearing Missouri license plate number 7D0W25.

On March 18, 2021 ATF and other local law enforcement agencies executed the search warrants on the vehicle and the residence. At approximately 6:45 AM, investigators observed Richardson leave his residence in the 2003 Dodge Ram and travel to the Phillips 66 gas station located at 1880 Little Brennan Road in High Ridge, MO. After entering the gas station lot, Richardson exited his vehicle and went inside the convenience store at Phillips 66. After exiting the convenience store, ATF Special Agents apprehended Richardson near his vehicle. Inside the vehicle, agents found, among other things, one firearm; an explosive fuse; one digital scale; five jars containing powder suspected to be explosive material, samples of which were later determined

by expert analysis to in fact, be explosives; PVC pipe with several pipe collars; one funnel; one small bottle of unidentified liquid; two cardboard tubes, and a notebook pertaining to explosive mixture instructions.

A search of the premises at 1817 Timber Lane resulted in the discovery of items including more containers of black powder, cut pieces of PVC at random sizes, electrical components, one empty PVC pipe with two end caps, two cardboard pipes surrounded by duct tape, and one rifle.

Members of the St. Louis Bomb Squad along with ATF Explosive Enforcement Officer, Special Agent Bomb Technician, and Certified Explosives Specialist examined the five containers of powder seized from Richardson's vehicle. These containers contained powders visually and physically consistent with explosive powders. Samples were taken from two of the containers and subjected to an ignition susceptibility test (IST). Both samples reacted to the IST in an energetic fashion consistent with that of explosive powders pursuant to Title 18, United States Code, Section 841. One of the containers, a peach slices jar labeled with "FP" on the lid, contained approximately 171 grams of greyish powder. A sample of that powder was ultimately tested by an expert forensic scientist at the St. Louis County Crime laboratory and identified as an explosive mixture containing potassium chlorate and aluminum. The other container, a cardboard device shaped in a tube, contained approximately 44 grams of a powdery substance. A sample of that powder was ultimately tested by a forensic scientist at the St. Louis County Crime laboratory and identified as an explosive mixture containing potassium chlorate and aluminum.

These samples were then provided to Senior ATF Explosives Enforcement Officer (EEO) Scott McCullough, who is an expert in the analysis of explosive devices. As described above, EEO McCullough analyzed the samples and formed an opinion that they were, in fact, explosive

materials; that is, respectively, chemical compounds, mechanical mixtures, or devices that contain any oxidizing and combustible units, or other ingredients, in such proportions, quantities, or packing that ignition by fire, by friction, by concussion, by percussion, or by detonation of the compound, mixture, or device or any part thereof may cause an explosion. With respect to the cardboard device shaped in a tube, EEO McCullough also determined that the device was designed to function by explosion. Lighting the fuse would begin a burning delay. After this brief delay, the fuse would ignite the explosive powder contained in the device resulting in an explosion that would produce blast and thermal effects capable of causing property damage and serious injury. Prior to transporting these explosive materials, Richardson stored them in a shed located on the premises of 1817 Timber Lane.

EEO McCullough also analyzed the steel galvanized pipe with one intact end cap and one exploded end cap recovered from a business adjacent to Richardson's property on February 3, 2021. EEO McCullough likewise determined this device was designed to function by explosion. Lighting the fuse would begin a burning delay. After this brief delay, the fuse would ignite the explosive powder contained in the device resulting in an explosion that would produce blast and thermal effects capable of causing property damage and serious injury. With respect to this device, EEO McCullough formed an expert opinion that this device was designed as a weapon and would be properly identified as an improvised explosive bomb.

Following the search of Richardson's vehicle and residence, investigators conducted an interview with Richardson. During the interview, and after being read and waiving his *Miranda* rights, Richardson admitted to constructing PVC and cardboard explosive devices. Richardson

also admitted to making and storing homemade black powder and flash powder. Richardson also admitted that he was a drug user and consumes methamphetamine every other day.

On March 12, 2021, investigators conducted a query Richardson through the National Firearms Registration and Transfer Record. No records were located, indicating that Richardson did not have any destructive devices and/or firearms registered.

On March 12, 2021, investigators conducted a query of the ATF Federal Licensing System (FLS) database, and on the same day, confirmed that Richardson is not a Responsible Person on any ATF Federal Firearms License (FFL), ATF Federal Explosive License (FEL), or ATF Federal Explosive Permit (FEP), nor has he ever been a responsible person on any FFL, FEL, or FEP. Additionally, he is not an Employee Possessor on any ATF FEL or ATF FEP.

Therefore, Richardson is not a licensee or permittee under Title 18, United States Code, Chapter 40, and further Richardson admits he knew he was not a licensee or permittee at the time he knowingly transported and stored the explosive materials.

Richardson also admits he improperly stored the seized explosive materials described above in a shed on the premises of 1817 Timber Lane that does not meet the requirements set out by the Attorney General in 27 C.F.R. Section 555.201 et seq.; including specifically, but not limited to, that the shed is closer than 140 feet to an unbarricaded inhabited building.

5.  **STATUTORY PENALTIES:**

The Defendant fully understands that the maximum possible penalty provided by law for the crime to which the Defendant is pleading guilty is imprisonment of not more than one year, a fine of not more than $100,000, or both such imprisonment and fine.   The Court also may impose a period of supervised release of not more than one year.

6.  **U.S. SENTENCING GUIDELINES: 2021 MANUAL**

The Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

A.  **Chapter 2 Offense Conduct:**

i.  **Base Offense Level:** The parties agree that the Base Offense Level is found in Section 2K1.3(a) and depends on, among other things, the nature of the Defendant's criminal history.

ii.  **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: none known at this time.

B.  **Chapter 3 Adjustments:**

i.  **Acceptance of Responsibility:** The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility.

The parties agree that if Defendant does not abide by all of the agreements made within this document, Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. The parties further agree that Defendant's eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based upon the information known at the present time and that any actions of Defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with Defendant's acceptance of responsibility including, but not limited to criminal conduct, are

grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

    **C.**    **Estimated Total Offense Level:**    The parties agree that the Total Offense Level will depend on the Base Offense Level determined pursuant to Section 2K1.3(a), along with other relevant factors stated above. However, the parties estimate that the Total Offense Level is 10.

    **D.**    **Criminal History:**    The determination of the Defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the Defendant's criminal history and the applicable category. The Defendant's criminal history is known to the Defendant and is substantially available in the Pretrial Services Report.

    **E.**    **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

**7.**    **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

    **A.**    **Appeal:**    The Defendant has been fully apprised by defense counsel of the Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

        **i.**    **Non-Sentencing Issues:**    The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial

motions, discovery and the guilty plea.

        ii.    **Sentencing Issues:**  In the event the Court accepts the plea and, after determining a Sentencing Guidelines range, sentences the Defendant within or below that range, then, as part of this agreement, the Defendant hereby waives all rights to appeal all sentencing issues other than Criminal History. Similarly, the United States hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea and sentences the Defendant within or above the determined Sentencing Guidelines range.

    **B.**    **Habeas Corpus:**  The Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    **C.**    **Right to Records:**  The Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.**    **OTHER:**

    **A.**    **Disclosures Required by the United States Probation Office:**  The Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the United States.

    **B.**    **Civil or Administrative Actions not Barred; Effect on Other Governmental**

**Agencies:**  Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the Defendant.

  C. **Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon the Defendant and may impose special conditions related to the crime Defendant committed. These conditions will be restrictions on the Defendant to which the Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The Defendant understands that parole has been abolished.

  D. **Mandatory Special Assessment:**  This offense is subject to the provisions of the Criminal Fines Improvement Act of 1987 and the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the Defendant agrees to pay at the time of sentencing. Money paid by the Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

  E. **Possibility of Detention:**  The Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

  F. **Fines and Costs of Incarceration and Supervision:**  The Court may impose a fine, costs of incarceration, and costs of supervision. The Defendant agrees that any fine imposed by the Court will be due and payable immediately.

  G. **Forfeiture:**  The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their

investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon [his/her] interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

**9.     ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, the Defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to

suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the United States to prove the elements of the offenses charged against the Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The Defendant further understands that by this guilty plea, the Defendant expressly waives all the rights set forth in this paragraph.

The Defendant fully understands that the Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The Defendant's counsel has explained these rights and the consequences of the waiver of these rights. The Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The Defendant is fully satisfied with the representation received from defense counsel. The Defendant has reviewed the United States= evidence and discussed the United States= case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the Defendant has requested relative to the United States= case and any defenses.

10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Department of Justice attorney, concerning any plea to be

entered in this case. In addition, the Defendant states that no person has, directly or indirectly, threatened or coerced the Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The Defendant further acknowledges that this guilty plea is made of the Defendant's own free will and that the Defendant is, in fact, guilty.

11. **CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if Defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The United States may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

12. **NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the United States agrees to dismiss or not to bring.

2/14/22
Date

LISA M. YEMM, #64601MO
Assistant United States Attorney

2/14/2022
Date

_____
ARCHIE M. RICHARDSON
Defendant

2-14-22
Date

_____
CHARLES BANKS
Attorney for Defendant